MANIER
vs
MYERS & JOHNS.

---

CASE.

Case 102.

May 8.

The case stated.

## Manier *vs* Myers and Johns.

ERROR TO THE MONTGOMERY CIRCUIT.

*Mills. Adverse enjoyments. Water easements.*

JUDGE MARSHALL delivered the opinion of the Court.

IN 1797, Yocum obtained leave from the County Court of Montgomery to erect a mill and a dam, ten feet three inches high, on Slate Creek, he being the owner of the land on both sides of the creek. In 1801, after Yocum had erected his dam to the height of about ten feet, Henry Myers obtained leave to erect a dam and mill on the same creek, above the dam of Yocum, which he did erect in that and the following year. In the fall of 1842, Manier, who had become the proprietor of Yocum's mill, erected a new dam a little above the site of the old one but adjoining the old abutment on one side. In August, 1843, Myers and Johns, who had for some time been the proprietors of Myers' mill, brought this action on the case against Manier, to recover damages for the alledged injury done to their mill by the erection of the new dam, whereby, as they say, the water is backed up and thrown upon the wheels and running gear of their mill so that they cannot use and enjoy it and make profit by it, as they had a right to do, and as they had theretofore done.

Both mills appear to have been in operation ever since their first completion, that of Myers having been subject, from the first, to be obstructed or drowned by freshets, even when the backwater was not thrown upon it by the dam below, but not being obstructed by backwater in ordinary stages of the water, previous to the erection of the new dam. This last fact is stated by many witnesses; some of whom also state that since the erection of the new dam the mill of Myers is obstructed and drowned by

the backwater, to a geater extent and for longer periods than before, whereby its efficiency and utility are so much impaired as to render it not worth the expense of keeping it up. Whether these consequences are properly attributable to the erection of the new dam, or to the nature of the season, and the unusual heights of the waters subsequently to its erection, or to the formation of a raft or drift in the creek, between the two mills, whereby, as some of the witnesses say, the water above is elevated considerably, or to other causes referred to in the testimony, it would be difficult and perhaps impossible to decide with certainty upon the evidence, there being much testimony to the effect not only that the new dam is not higher than the old one, but that it does not, either by reason of its being higher or tighter, raise the water higher than the old one did, nor occasion any greater inconvenience to the mill above.

We do not, however, feel called upon to investigate these questions of fact, since, in the conflict of testimony and opinions, the verdict for the plaintiff, sustained by the opinion of the Circuit Court, must, if uninfluenced by improper instructions, be deemed conclusive as to the facts involved in it. We shall, therefore, proceed to consider the principles of law involved in the case, and to compare the opinions of the Circuit Court in giving and refusing instructions with our own conclusion.

Yocum, having first obtained the privilege of erecting a dam of a prescribed elevation, had the undoubted right to build and maintain it at that elevation, by such repairs as] might, from time to time, be required. And Myers, having subsequently obtained leave to build a dam and mill higher up the stream, had no right to complain, if in consequence of their location they were subject to be and were in fact overflowed or otherwise obstructed in their operation, and rendered useless by the proper exercise of the privilege previously granted to Yocum. It is not to be presumed that Myers located his mill in such a position as to be seriously obstructed in its operations at their very commencement by the dam of Yocum, as it then existed. But if it were so located as that the dam of Yocum, being then precisely ten feet three inches high,

threw the water back on the wheels of Myers' mill, so that it could not operate efficiently, still the dam of Yocum might, by dilapidation or decay or natural depression by sinking, become so low as to admit of the advantageous operation of the mill above, and it might be that it was, for a long space of time, permitted so to remain, without being raised to its original hight or to any other elevation, which would obstruct the operations of the mill above, and that during all that time, the upper mill was advantageously used with the free passage of the water from it without obstruction from the dam of Yocum, or from the elevation of water thereby. This would be an enjoyment, by Myers, of the use of the water for the purposes of his mill, and of the free course of the stream in the channel below, so far inconsistent with and adverse to the privilege which had been granted to Yocum; and the question, upon this state of case, would be whether the continuance of such adverse and inconsistent enjoyment, for any length of time, would suffice to mature it into a right, and thus to limit the privilege of Yocum, or would constitute such evidence of a right as if unrebutted, would produce the same effect? And if any length of such enjoyment would suffice for this purpose, the question is what must the period be?

It is obvious that the same questions will arise if it be assumed that although a dam built by Yocum as authorized, to the height of ten feet three inches, would have prevented the advantageous operation of a mill built where that of Myers was afterwards located; yet the dam was either not erected to that height at first, or being at first of that height, became afterwards so low, either before or after the erection of Myers' mill, as not to obstruct it, and was permitted so to remain for a long period, during which Myers used his mill and enjoyed the use of the water and the free course thereof for the purposes of the mill. If there was such continued enjoyment and use on the part of Myers or his successors in the ownership of the upper mill as to constitute or evidence a right on his part to a continuance of the same, then the subsequent elevation of the lower dam, whether by addition to the old structure or by the erection of a new one, so as to im-

pair the enjoyment and use of the water for the upper mill, as they had been thus continued, would, although within the terms of the original privilege of Yocum, be an infringement of the right of the owners of the upper mill, remediable by action on the case, and as clearly wrongful as if the original privilege were exceeded by such subsequent elevation.

Upon the first of the two questions which have been stated, viz: Whether any length of enjoyment, adverse to and in consistent with an existing right in another, would in point of law or as matter of evidence, have the effect of destroying that right and uniting the right with the possession or proving such union, we think there cannot be a doubt.

This proposition, in the terms in which it is stated, is not understood to be denied on the part of Manier. But it is contended by his counsel, that here is no *adverse* enjoyment, and nothing but a partial non-user of their right by Yocum and his alienees, and that such non-user could not, alone, deprive them of their right, or confer it on another. If by this argument it is intended to assert that if Yocum's dam had been built only to the height of eight feet, or having been built higher, had afterwards sunk to that elevation, and in either case had so remained for thirty or fifty or one hundred years, and at the end of that period another had, under proper authority, built a dam and mill above, at a site where it would not be obstructed by the back water from the lower dam, as it then existed, and as it had existed for thirty, fifty, or one hundred years, the owners of the lower dam might immediately afterwards elevate it to a greater height, not exceeding their original privilege, without subjecting themselves to an action for any injury which might be thereby occasioned to the upper mill, though we are by no means prepared to concede such a proposition; yet as it does not, in our opinion, involve the question presented in this case, we deem it unnecessary to decide or to discuss it. The case before us, as insisted on by the defendants in error, and as intended to be presented to the jury by the first instruction of the Court, is one not merely of a partial non-user of the privilege on the one side, but also of a continued

Manier
vs
Myers & Johns.
enjoyment on the other of a privilege or easement which could not have been enjoyed if there had been a full exercise and constant use of the first privilege, and which is, therefore, inconsistent with it. And the question is not, whether mere non-user of a privilege for any length of time by a party entitled to it, will defeat it, or be evidence of its abandonment, but whether the uninterrupted enjoyment on the other side of an easement or service, inconsistent with the privilege, by the assertion of which such enjoyment might, at any time, have been defeated, will not, in the lapse of time, create the presumption of a grant or agreement authorizing such enjoyment and relinquishing *pro tanto*, the inconsistent privilege.

It is argued that the enjoyment in the case before us,

For an easement to grow into a right by *adverse enjoyment*, it is not indispensable that it shall have been preceded by a disseizen, it is sufficient if it be uninterruptedly enjoyed by one and a non-user by another for 20 years.

and in the cases which we have assumed for presenting the question, is not in the nature of a disseizen, and is, therefore, not such an *adverse* enjoyment or possession as in analogy to other cases, will furnish ground for presuming a grant. It is true, the enjoyment of the free flow of the water from the upper mill did not constitute such an invasion of the possession of the owner of the lower mill, or such an infringment of any of his rights as would authorize an action, and therefore, there is no room for the direct application of the statute of limitations, nor of the consequences directly arising from the statutory bar. And if the statute of limitation furnished the only foundation for the presumption of right growing out of long enjoyment or possession, there might be no just ground for applying such presumptions where the statute could not be applied. But the statutes of limitation, instead of being the basis of these presumptions, are, to a certain extent, founded on them. One great object of these statutes is to preserve the peace and quiet of society by giving security to long continued possession. But even this is a pre-existent policy, rather the cause than the effect of the statute. And although, so far as they assume any particular period as sufficient to establish a conclusive presumption of right, they may be admitted to be arbitrary, yet even in this respect they do not create the presumption but regulate it and determine its force. Before the enactment of any such statutes and in cases

entirely beyond their reach, natural reason and the common sense of mankind, looking as they must always do to the common safety and convenience, have every where considered long possession as the evidence of right, and the omission for a long time to claim that which is possessed by another, as evidence of the non-existence or abandonment, or transfer of right. The statutes fix the time when this evidence shall be deemed conclusive in certain enumerated cases. And in other cases coming within the principle on which the presumption is founded, this time is adopted in analogy to the statute, not as furnishing conclusive and indisputable evidence of right, for natural reason leaves every question of fact open to further evidence, but as furnishing a presumption sufficient until rebutted, to establish the right on the side of the possession.

It is presumed, on principles belonging to the nature of man, that every one will enjoy his own, and that no man will stand quietly by and permit another wrongfully to enjoy that which belongs to himself. The law, therefore, presumes in favor even of a present possession unaccounted for, and holds it to be a grade of title, and a presumptive evidence of right; much more will it presume in favor of long continued possession, even independently of the statutes fixing a bar by time to the assertion of adversary rights. If a possession adverse to the right is to be defeated by action, the statutory bar applies, and will, in time, operate to transfer the right to the possession. And although, when no action can be brought to defeat the possession, the same lapse of time may not have the same peremptory operation of transferring the right to the possession, yet surely when inquiring into the effect of time and possession, as mere evidence, they cannot in point of reason be entitled to less weight because the party claiming or having the right in the beginning need not or could not resort to an action to defeat the inconsistent possession, but may defeat it by the simple and peaceable exercise of his right. The questions why the party has so long abstained from the exercise of his right, and why he has so long acquiesced in an enjoyment and possession by another, inconsistent

with that right and adverse to it, are as applicable in one case as in the other, and lead in both to the same answer. Nor on the score of policy is there such a difference as that the length of possession which, in the one case is decisive and conclusive of right, should not, in the other reap the benefit of the natural and reasonable presumption arising from it. In applying this reasoning to the present case, we assume that the use and enjoyment of the upper mill have been inconsistent with and adverse to the right of raising the lower dam so as to obstruct the upper mill. And in this assumption, it is implied that the upper mill was used and enjoyed as it has been under claim of right, so to use and enjoy it. If the upper mill was used and enjoyed as matter of right, and not under license or favor of the owner of the lower mill, and in submission to his right to obstruct it or not, then as the right to have the water flow freely from the wheels of the upper mill is utterly inconsistent and irreconcileable with the right of causing it to flow back upon them, we say the enjoyment of the former right involved in the use and enjoyment of the upper mill, under claim of right, is adverse to the latter inconsistent right. The two rights cannot co-exist, the exercise of one under claim of right, is an absolute denial of the other, and is, therefore, necessarily hostile to it. And we say such an adverse or hostile enjoyment, continued for a great length of time, affords a presumption of right, though it do not amount to an actual invasion of the possession of another, and was never remediable by action. This conclusion finds ample support in the well established doctrines of the common law, and as we believe of all other systems of European law relating to the privilege of ancient lights. If a man build a house upon his own ground, near that of his neighbor, and place windows in his house, through which the light from over his neighbors land passes in, though in thus appropriating this light he commits no ouster or disseizen, and is guilty of no wrong remediable by action, and though his neighbor has no means of defeating this enjoyment but by building a wall on his own land which shall obstruct its passage, yet if he abstain from doing so and permit the use and enjoyment of the

light passing through the windows for a great length of time, which has been fixed by many cases at twenty years in analogy to the statute of limitations, as to the possessory title to land, the presumption of right will be indulged in favor of this long possession, and in the absence of countervailing circumstances, will be held conclusive, and he will be subject to an action if he subsequently obstruct these ancient lights by building a wall even upon his own land; and we understand it to have been determined that he has no right to obstruct them, (except by the custom of particular places,) even by raising the wall of a low building which had been erected before the windows or the house in which they are were in existence.

In regard to the particular subject of water, Lord Ellenborough said in the case of *Beaty* vs *Shaw*, (6 *East*, 208:) ''I take it that twenty years exclusive enjoyment of water in any particular manner, affords a conclusive presumption of right in the party so enjoying it, derived from grant or act of Parliament.'' And although the expression ''conclusive presumption,'' may be too strong, unless understood to mean conclusive until disproved, yet in other respects the position contained in this sentence seems to be entirely consistent with the current of modern English authorities; the period of twenty years having been taken in analogy to the statutory limitation of possessory action for land.

The right, for the alledged violation of which this action was brought, is an easement or service in the nature of an incorporeal hereditament, and in the case of *Million* vs *Riley*, &c. (1 *Dana*, 362,) this Court recognizes the doctrine that grants of incorporeal hereditaments are presumed, after a possession of twenty years, in analogy to the statute of limitations—and many English cases establish the presumption. There are also various American cases in which it has been decided that the use of water for such a length of time as would, by statute, bar a possessory action for land, will furnish ground for presuming a grant. In this case the Circuit Court seems to have assumed thirty years as the period of enjoyment necessary to establish the right. But we do not see why,

MANIER
*vs*
MYERS & JOHNS.

in analogy to our statute limiting the right of entry unto land, and in analogy to the presumption indulged in many other cases, twenty years should not be deemed sufficient.

Our view then of the law of the present case is this, that to the extent that the plaintiffs and those under whom they claim, had had the peaceable, continued, and uninterrupted use of the water from their dam, for the use and purpose of working their mill, with the flow of the water from its wheels, unobstructed by the dam next below it, for twenty years next preceding the erection of the new dam by the defendant, and under claim of right so to use it, to that extent they should be presumed to have a right to the use and flow of the water as aforesaid; and if, by the erection of the new dam, the defendant had, to any extent, deprived them of this right by reason of the new dam throwing the water back upon the wheels of their mill, or impeding its flow therefrom, more than it had done at any time during the said twenty years, and they were thereby injured in the use and enjoyment and profit of their mill as they had been accustomed to have them for the time aforesaid, then they have a right to maintain this action and to recover damages for the injury so caused by the defendant, without regard to the question whether the new dam is or is not as high or higher than the old dam originally was or might have been built, provided the defendant and those under whom he claims knew of such enjoyment and use of the upper mill. But the defendant had a right, without subjecting himself to any liability to the plaintiff, to erect the new dam where he did erect it, and to a height not exceeding his original privilege, provided the water was not thereby elevated more than it had, at any time within twenty years next preceding, been elevated by the old dam, and so much as to obstruct and impede the operations of the mill of the plaintiffs, more than had been done by the old dam at similar stages of the water, at any time within the said twenty years.

*Where the free flow of water to and from a mill has been enjoyed for 20 years, it may not be obstructed even by one who might have obstructed, in the exercise of a legal privilege, before such lapse of time.*

The first of the two instructions given by the Court seems to be defectively copied, and does not, as presented in this record, contain a complete proposition. In

*Where the preponderance of evidence is*

assuming, as we understand it to do, that thirty years instead of twenty years enjoyment was requisite to establish the right, it is more favorable to the defendant than the law as expounded in this opinion—but it seems not to be sufficiently specific in defining the circumstances which must concur with the possession, nor as to the extent of the right thereby acquired.   And the second instruction, which undertakes to state the circumstances under which the defendant might rightfully have erected his new dam at the place where it stands, not only makes that right subject to the condition that the new dam "did not back the water more to the injury of the plaintiff's mill than the old one had done for more than thirty years," which is susceptible of the construction that the old dam must have backed the water as much as the new dam, during the entire period of thirty years, which is obviously wrong: but, waiving this construction as perhaps hypercritical, it subjects the right of the defendant to the further condition that Myers, under whom the plaintiffs claim, should also have consented to the erection of the old dam.   As the defendant's right to erect both the old and the new dam, under and within the terms of his grant, was clearly independent of the consent of Myers, and as his defence in this action could not properly be affected by the condition referred to, · the instruction was erroneous in making the reference.  And as the jury may have found that Myers did not consent, and as such a finding may, in a case doubtful on other points, have determined the verdict in favor of the plaintiffs, this error must be deemed prejudicial to the defendant.

Wherefore, for this error, and because the instructions do not, in other particulars above referred to, conform to the exposition of the law of the case as made in this opinion, the judgment is reversed and the cause remanded for a new trial.  ·

*Robinson & Johnson* and *H. Daniel* for plaintiff: *Apperson, Hanson, and Peters* for defendants.

MANIER
*vs*
MYERS & JOHNS.

doubtful, if the law be not correctly given by the Court, to the jury, a new trial should be granted.