PETER PIERRE & ux. v. ISAAC FERNALD.

Where one erects a building upon his own land immediately adjoining the land of another person, and puts out windows overlooking that neighbor's land, he does no more than exercise a legal right ; and he cannot by the continuance of such windows without obstruction for more than twenty years acquire any prescriptive rights or easements in favor of ancient lights, which will enable him to sustain an action against the adjoining owner for erecting fences or buildings, by means of which such lights are obstructed.

The Rev. Stat. c. 147, § 14, was not designed to create or give any such rights as are therein mentioned, or to determine when, or upon what terms, they had already been acquired ; but to prevent their future acquisition without conformity to certain prescribed conditions.

But if the English doctrine, that a grant or other contract securing to the party an unobstructed flow of light and air will be presumed from the use of windows on his own land, for twenty years, were the law of this State, no such right could be acquired by such use during the time that the person claiming the right was in the occupation of the adjoining land as tenant of the owner.

CASE. The plaintiffs declared against the defendant for shutting out the light and air from windows in their house by

the erection of a high fence against the windows.   The fence was erected on the defendant's own land.

At the trial before TENNEY J. after the parties had introduced all their evidence, they agreed that a report thereof should be made, and that the case should be determined by the Court, without any verdict, and that such judgment should be rendered as the Court should deem proper; and that the Court should draw such inferences from the facts as a jury would be authorized to do.

.   The material facts, which in the view of the Court, were proved, appear in the opinion.

*Fessenden, Deblois & Fessenden*, for the plaintiffs, contended, that it appeared from the case, that the plaintiffs had quiet and uninterrupted possession of these lights for more than twenty years; and that, therefore, there was sufficient ground to presume a grant to them from the owner of the adjoining lot.

This has always been the common law, and has been so declared in this State by statute.   Rev. St. c. 147, § 14, 16. This statute is merely declaratory of the common law.   *Lewis* v. *Price*, 2 Saund. 175, note; Stark. on Ev. 989, 1719; 2 Chitty's Plead. 379; 2 Kent, 442; *Baker* v. *Richardson*, 4 Barn. & Ald. 579; *Cross* v. *Lewis*, 2 B. & Cres. 682; *Daniel* v. *North*, 11 East, 371.   The law appears to be well settled in England.   And it is also the law in this country.   3 Kent, (5th Ed.) 448; *Story* v. *Odin*, 12 Mass. R. 157; 2 Dane, c. 69, art. 2, § 2; *Hunt* v. *Hunt*, 3 Metc. 185; *Hill* v. *Crosby*, 2 Pick. 466; *Thurston* v. *Hancock*, 12 Mass. R. 224.

It is not necessary, that the adverse possession should be belligerent.   It is enough, if no objection is made by the party whose rights are affected by the claims of the possessor. Acquiescence in the use, with a knowledge of it by the owner of the land adjoining, is sufficient.   *Tinkham* v. *Arnold*, 3 Greenl. 122; *Butman* v. *Hussey*, 12 Maine R. 407; 3 Kent, 444; *Tyler* v. *Wilkinson*, 4 Mason, 397.

In the occupation of the defendant's lot by the plaintiff for a part of the time, there was nothing to prevent the owner from interrupting the easement, and shutting up the windows. The hiring by the plaintiff was enabling him to use the property in his own way, and was an acquiescence in the use of the windows as they were. It would not affect the right. *Cross* v. *Lewis*, 2 B. & Cr. 682; *Corning* v. *Gould*, 16 Wend. 531; *Colvin* v. *Burnett*, 17 Wend. 568; *Bealey* v. *Shaw*, 6 East, 215; *Sargent* v. *Ballard*, 9 Pick. 254; *Tyler* v. *Wilkinson*, 4 Mason, 402; *Thomas* v. *Marshfield*, 13 Pick. 248; 4 Day, 250; *Gayetty* v. *Bethune*, 14 Mass. R. 53; Co. Lit. 113, *b*; 14 Pick. 247; 4 T. R. 71; 3 B. & Ald. 304; 2 Chitty's Pl. 379.

*Fox*, for the defendant, admitted that in England a prescriptive right might be acquired by the use of windows on the line of land for a sufficient length of time; but denied that such had ever been the received law in this country. The doctrine cannot be supported on principle, and is pernicious in practice.

By the use of lights in any way the owner chooses upon his own land, he cannot injure his neighbor, and does nothing, of which complaint can be made. He cannot, therefore, acquire the right to limit or control the adjoining owner in his occupation of his own land. *Parker* v. *Foote*, 19 Wend. 309; *Nelson* v. *Butterfield*, 21 Maine R. 220; 2 Conn. R. 597; 3 Kent, 448.

But even under the English law, the plaintiffs have acquired no prescriptive rights against us. While they were in possession of our land under a lease from us, they could acquire no such right. And without including that time, they have not shown any using of the windows for twenty years. *Sargent* v. *Ballard*, 9 Pick. 251; 3 Dane 252; 7 Metc. 401.

The opinion of the Court was drawn up by

SHEPLEY J. — This is an action on the case brought to recover damages for the injury suffered by the obstruction of the natural flow of light and air to two windows, put out of the

north-east end of the plaintiff's dwellinghouse in the city of Portland.

That house appears to have been built during the latter part of the year 1823. The north-east end of it was placed upon the line dividing the lot, on which it was erected, then owned by Henry Titcomb, from the lot then owned by Robert Ilsley, and now owned by the defendant. The north-east corner of it appears to have been placed a few inches upon the lot now owned by the defendant, which was then unoccupied; and it so remained until the year 1831; when George Pierson, at that time the owner, built a shop upon it. That shop appears to have been placed two and a half to three feet distant from the north-east end of the plaintiff's house, and to have been about as high as the fence erected by the defendant during the year 1844, when the shop was removed. The fence was built upon the defendant's lot and within three or four inches of the back window and within about twelve inches of the other window in the end of the plaintiff's house, and so high as materially to obstruct the admission of light and air.

The plaintiff, Peter, hired that shop, with the land back of it and around it, and occupied the same, paying rent therefor, from 1835 or 6, until July, 1844, when the defendant purchased.

The first question presented is, whether the English doctrine respecting the obstruction of light and air is to be received as law in this State.

The origin and principles of the law in relation to the presumption of grants was considered in the case of *Nelson* v. *Butterfield*, 21 Maine R. 234, and it will not be necessary to repeat the remarks and conclusions there stated, or to refer again to the authorities there cited. The principle, upon which the presumption of grants or other contracts for the security of rights and easements is made, is, that when one person knowingly permits another for a long course of years and without molestation or interruption to claim and enjoy rights, easements, or servitudes, injurious to him or his estate,

it would be against man's experience and contrary to his mo-
tives of conduct to account for it so satisfactorily in any other
manner, as to presume, that he had authorized it by some
grant or agreement.

When it appears that the enjoyment has existed by the
consent or license of the person, who would be injured by it,
no such presumption can be made. Hence there must be
proof of an adverse claim and enjoyment. *Bealey* v. *Shaw*,
6 East. 208 ; *Gayetty* v. *Bethune,* 14 Mass. R. 49 ; *Sargent*
v. *Ballard*, 9 Pick. 251 ; *Tinkham* v. *Arnold*, 3 Greenl. 120 ;
*Colvin* v. *Burnet*, 17 Wend. 564. In the latter case Mr.
Justice Cowen says, " all the cases, which have considered this
defence are at least uniform in one thing ; that it must com-
bine not only continuity and a peaceable possession without
the hindrance of the owner in respect to whose land the
easement is claimed, but in complete analogy to its archetype,
the bar in ejectment, the possession must appear to have been
adverse."

Nothing in the law can be more certain, than one's right to
occupy and use his own land, as he pleases, if he does not
thereby injure others. He may build upon it, or occupy it as
a garden, grass plat or passage way, without any loss or dimi-
nution of his rights. No other person can acquire any right
or interest in it, merely on account of the manner, in which it
has been occupied. When one builds upon his own land
immediately adjoining the land of another person and puts out
windows overlooking that neighbor's land, he does no more
than exercise a legal right. This is admitted. *Cross* v. *Lewis*,
2 B. & C. 686. By the exercise of a legal right he can make
no encroachment upon the rights of his neighbor, and cannot
thereby impose any servitude or acquire any easement by the
exercise of such a right for any length of time. He does no
injury to his neighbor by the enjoyment of the flow of light
and air, and does not therefore claim or exercise any right
adversely to the rights of his neighbor. Nor is there anything
of similitude between the exercise of such a right and the ex-
ercise of rights claimed adversely. It is admitted in the

can obtain redress by any legal process. In other words, that his rights have not been encroached upon; and that he has no cause of complaint. And yet, while thus situated for more than twenty years, he loses his right to the free use of his land because he did not prevent his neighbor from enjoying that, which occasioned him no injury and afforded him no just cause of complaint. The result of the doctrine is, that the owner of land not covered by buildings, but used for any other purpose, may be deprived of the right to build upon it by the lawful acts of the owner of the adjoining land performed upon his own land and continued for twenty years.

It may be safely affirmed, that the common law originally contained no such principle. The doctrine as stated in the more recent decisions appears to have arisen out of the misapplication in England of the principle, by which rights and easements are acquired by the adverse claim and enjoyment of them for twenty years, to a case, in which no adverse or injurious claim was either made or enjoyed.

This doctrine has been examined and its want of sound principle exposed in the case of *Parker* v. *Foote*, 19 Wend. 309. Mr. Justice Bronson very justly remarked, " it cannot be applied to the growing cities and villages of this country without working the most mischievous consequences. It has never, I think, been deemed a part of our law. Nor do I find, that it has been adopted in any of the States." " It cannot be necessary to cite cases to prove, that those portions of the common law of England, which are hostile to the spirit of our institutions, or which are not adapted to the existing state of things in this country, form no part of our law."

Chancellor Kent says, " this common law right of prescription in favor of ancient lights does not reasonably or equitably apply, and it is not the presumed intention of the owners of city lots, that it ever should be applied to buildings on narrow lots in the rapidly growing cities in this country." 3 Kent's Com. 446, note *b*.

In the case of *Atkins* v. *Chilson*, 7 Metc. 398, it is stated,

that the tendency of the decisions in that State has been favorable to a reception of the English doctrine, but there is a distinct statement, that no opinion is expressed upon it in that case.

It is provided by statute, c. 147, § 14, that "no person shall acquire any right or privilege of way, air, or light, or any other easement, from, in, upon, or over the land of another by the adverse use or enjoyment thereof, unless such use shall have been continued uninterrupted for twenty years." The following sections prescribe the mode, by which the acquisition of such rights may be prevented. It is obvious, that these enactments were not designed to create or give such rights, or to determine when or upon what terms, they had already been acquired. These matters were left to be decided by the law as it previously existed. The design was to prevent their future acquisition without conformity to certain prescribed conditions. It does not even appear to have been intended to declare, that they would in future be acquired by virtue of the statute merely, but rather to prevent their acquisition without conformity to its provisions, leaving the decision to the previously existing law, whether any would be acquired. But whatever may be its true construction, it can have no influence upon the plaintiff's rights in this case.

The second question presented, is, whether from the facts proved, a grant or other contract, securing to the plaintiffs an unobstructed flow of light and air, can be presumed.

According to the English doctrine such a presumption can arise only, when the right claimed has been exercised in such a manner for twenty years against the owner of the adjoining land, that he might, during all that time, have prevented it by some erection so made as to obstruct the light and air.

The rule is more rigidly stated in the case of *Daniel* v. *North*, 11 East, 372. Lord Ellenborough says in that case, "the foundation of presuming a grant against any party is, that the exercise of the *adverse* right, on which such presumption is founded, was against the party capable of making the grant." Le Blanc J. in the same case says, "it is true that

presumptions are sometimes made against the owners of land during the possession, and by the acquiescence of their tenants, as in the instances alluded to, of rights of way and of common ; but that happens, because the tenant suffers an immediate and palpable injury to his own possession, and therefore is presumed to be upon the alert to guard the rights of his landlord as well as his own, and to make common cause with him ; but the same cannot be said of lights put out by the neighbors of the tenant, in which he may probably take no concern, as he may have no immediate interest at stake." The case decides, that the landlord was not precluded, where lights had been put out and enjoyed for twenty years, while the premises were in the occupation of his tenant, there being no evidence of his knowledge of the fact.   And how could proof of his knowledge have made any difference ?   He could then do nothing to prevent it, but by making some erection upon his own land ; and he could not lawfully enter upon it and do that, while it was held under a lease by his tenant.

In the case of *Barker* v. *Richardson*, 4 B. & A. 579, it was decided, that no such presumption could be made, while the premises were in the occupation of a rector as tenant for life, because he was incapable of making such a grant.

In the case of *Sargent* v. *Ballard*, 9 Pick. 251, the doctrine stated by Bracton is recognized, that " it must be with the knowledge and permission of the owner, and not merely of the tenants."

The premises overlooked from the plaintiff's windows were occupied by them about eight of the twenty years, during which the presumption must have arisen.   During those eight years both estates were in the possession of the plaintiff, Peter. There could be no adverse enjoyment of the flow of air and light during that time, nor of any thing that could be likened to an adverse enjoyment of it.   The landlord could not prevent such enjoyment by his tenant in any way, for he could not enter upon the land while leased to the tenant, to make an erection to obstruct the light and air.   And no presumption

could be made, if the English doctrine were admitted here, which would enable the plaintiffs to maintain this action. ·

*Plaintiffs nonsuit.*