JUDGE COFER
delivered the opinion oe the court.
The appellee is the owner of a lot in the town of Lancaster on which is situated a storehouse. In the rear of the storehouse is a room used as a tailor’s shop and counting-room. The north end of the counting-room abuts on a house owned by the appellant, and the walls of the two houses extend to the division-line between their respective proprietors. The west wall of appellee’s store and counting-room extends to his line on that side, and a building extending along the whole length *6 of that line excludes from his counting-room- light and air on that side. East of his store is a building adjoining it and extending about to the partition between the store and' counting-room. Immediately east of the counting-room is an open lot in the possession of and claimed by the appellant and having on it a stable, privy, and cistern, used in connection with his house abutting on the north end of the store, and occupied as a residence. In the wall of the counting-room, separating it from the open lot, there is a door opening out into and a window overlooking the lot, through which light and air reach the counting-room.
In December, 1875, the appellant erected a small wooden building on the open lot opposite, and so near to the door and window in the counting-room as to substantially exclude the light and air.
To recover damages for the injury sustained in consequence of the obscuration of his window and door the appellee brought this suit, claiming that by long-continued and uninterrupted enjoyment of light and air flowing into his counting-room over appellant’s lot, he had acquired a right to enjoy them as ancient lights.
The appellant answered in substance denying the right of the appellee to the enjoyment of the window and door as ancient lights.
Verdict and judgment were rendered for the plaintiff, and the defendant has appealed.
The evidence conduced to prove that appellee’s lot, and the open lot upon which the appellant erected the building complained of, as well as that on which appellant’s dwelling-house stands, are all parts of lot number eight in the plan of the town; that about the year 1855 the whole of that lot belonged to Phillips & West; that during that year they sold appellee’s lot to Bryant, retaining the residue; that some time thereafter, but precisely when the evidence does not show, *7 Bryant erected the storehouse and counting-room, and made the door and window in the east wall of the latter; that Bryant subsequently sold and conveyed the lot to Phillips, and Phillips sold it to appellee; and that from the time the store and counting-room were erected, up to the erection of the building now complained of, a period of not less than twenty years, light and air had been supplied to the counting-room through that door and window.
The evidence also showed that the appellant’s open lot was exposed to view from the door and window in the counting-room, and that his family, when he occupied his dwelling, and the families of his tenants, when the house was rented, were in consequence more or less annoyed.
Having enjoyed light and air flowing into his counting-room over the appellant’s lot for a period of more than fifteen years, it is claimed for the appellee that he thereby acquired a right to the perpetual enjoyment of the easement.
Our statute of limitations limits an action for the recovery of real estate to fifteen years after the right to institute it first accrued to the plaintiff or the person through whom he claims; and it has been held by this court that a possession which bars the right of the real owner to recover land invests the tenant in possession with title upon which, if he subsequently gets out of possession, he may maintain ejectment. And the statute provides that the words “ real estate ” or land, in a statute, shall be construed to mean lands, tenements, and hereditaments, and all rights thereto and interests therein other than a chattel interest. (Sec. 13, chap. 21, Gen. Stat.)
An easement of light and air is an incorporeal hereditament, and like all other easements upon or in land, is an interest in the land. (Wash, on Eas. and Serv. 3, 14, 240.)
Fifteen years’ adverse enjoyment of an easement in or upon land will therefore not only bar an action to deprive the per *8 son, so enjoying, of the right to the easement, but will enable, him to vindicate his right by appropriate action.
It results therefore that the appellee, having enjoyed an easement of light and air over the appellant’s open lot for a period of more than fifteen years, has acquired a right to its continued enjoyment if his past enjoyment has been adverse within the meaning of the statute of limitations.
But under our statute limitation never begins to run until a cause of action has accrued to the adverse party, which he has omitted to enforce; so that no right can be lost or acquired by virtue of the statute where there has been no act done by the one for which the law gives a remedy, by action, to the other; and it is conceded in this case that the appellee never had a cause of action against the appellant or his vendors for any act of his or theirs in erecting the counting-room and opening and continuing the door and window on the side adjoining and overlooking the appellant’s lot.
This is fatal to the appellee’s claim so far as it is attempted to base it on the statute of limitations. (See Hubbard v. Town, 3 Vt. 298.)
But it is contended that the doctrine of the English common law in respect to ancient lights is in force here, and the action may be maintained on that doctrine.
Counsel for the appellant deny that the law of ancient lights was ever in force in this state, and thus is presented the principal question for decision.
This court has never passed upon the question. It was referred to arguendo in'the opinion in Manier v. Myers & Johns, 4 B. Mon. 514, and tacitly recognized as the law of this state; but the question was not involved in the case, and its foundation was not examined into in the opinion, and what was there said was mere dictum, and is only entitled to the weight due to the individual opinions of the eminent men then on this bench.
*9 By an act of the Virginia convention of 1776 it was declared “that the common law of England, all statutes or acts of parliament made in aid of the common law prior to the fourth year of the reign of King James I, and which are of a general nature, and not local to that kingdom .... shall be the rule of decision, and shall be considered i;i full force, until the same shall be altered by the legislative power of this colony.” (M. & B. Stat. 612.)
The present constitution provides, and previous constitutions in substance provided, that “all laws which on the first day of June, 1792, were in force in the state of Virginia, and which are of a general nature, and not local to that state, and not repugnant to this constitution, nor to the laws which have been enacted by the General Assembly of the commonwealth, shall be in force in this state until they shall be altered or repealed by the General Assembly.”
The Revised Statutes repealed certain statutes of Virginia and of England, as do the General Statutes, but neither repeals the common law of England.
It has been stated in argument in another case, if not in this, that between 1776 and 1792 the legislature of Virginia repealed the act of 1776,. section 6 of which we have already quoted, and that therefore the common law of England is not in force here by virtue of that act and of the provisions of our several constitutions.
No such statute as that by which the act of 1776 is supposed to have been repealed has ever been published among the laws in force in this state, and if any such existed it was unknown to this court in 1806, when, in deciding the case of Hunt v. Warnicke, Hard. 62, it was held that the common law was in force here in virtue of the act of 1776, and although we do not know of any other case in which the existence here of the English common law is so distinctly recognized as in that case, yet there are very many cases the decisions in which *10 were based on its assumed existence, and of its existence in fact we entertain no doubt whatever
But only such principles and rules as constituted a part of the common law prior to the fourth year of the reign of James I are or ever were in force in this state. This is clearly implied in the act of 1776. To declare that the common law and statutes enacted prior to that time should be in force, was equivalent to declaring that no rule of the common law not then recognized and in force in England should be recognized and enforced here.
James I ascended the throne of England in 1603, March 24, and the fourth year of his reign commenced March 24, 1607, and when it is sought to enforce in this state any rule of English common law as such, independently of its soundness in principle, it ought to appear that it was established and recognized as the law of England prior to the latter date.
The Supreme Court of New York, in Parker v. Foote, 19 Wend. 309, said it would be difficult to prove that the rule respecting ancient lights was known to the common law of England previous to April 19,1775. “ There were,” said Bronson, J., “ two nisi-prius decisions at an earlier day, Lewis v. Price, in 1761, and Dungall v. Wilson, in 1763, but the doctrine was not sanctioned in Westminster Hall until 1786, when the case of Darwin v. Upton was decided by the K. B., 2 Saund. 175, note 2. This was clearly a departure from the old law. (Bury v. Pope, Cro. Eliz. 118.”)
Mr. Washburn, in his treatise on the law of Easements and Servitudes, p. 576, referring to the case of Parker v. Eoote, and the foregoing remarks of Bronson, J., says that “in Calthrop’s Reports, published in 1661, p. 3-8, it is shown that by the custom of London one might not erect a new house upon a vacant lot so as to obscure the windows of an ancient house, for the ancient house had by the enjoyment acquired an easement of light by prescription.”
*11 This discovery of the learned author does not militate against the conclusion reached by the New York court, but that he found no other case than that cited very strongly confirms the truth of what the court said.
It was only the common law of a general nature and not local to the kingdom of Great Britain that was declared by legislative authority to be in force, either in New York, Virginia, or Kentucky, or indeed in any of the states of the Union; and as the case in Calthrop, and the only one prior in date to 1761, cited by Mr. Washburn, and presumably the only one to be found in any English book of reports of older date, was based on a local custom in the city of London, we hazard nothing in following the Supreme Court of New York in holding that the English common law respecting ancient lights never had an existence in this state.
But so far as the English rule is based upon sound principles and natural justice it may be in force here, not indeed because it is law in England, but because, being based on sound reason, it is law every where.
The English rule is based on the ground that long-continued and uninterrupted enjoyment of light and air flowing into one’s house laterally across his, neighbor’s ground is evidence of a grant, or, what is the same thing, of an agreement on the neighbor’s part not to obstruct the lights; and the period of enjoyment necessary to furnish satisfactory evidence of a grant or agreement not to obstruct the flow of light and air is fixed in analogy to the period of adverse enjoyment necessary to create presumptive evidence of a grant of land.
But the distinction between the adverse holding of land and the mere enjoyment of light and air flowing into one’s house over the adjacent land of his neighbor is quite obvious.
The adverse holding of one’s land, if wrongful, is a continuing injury to him, and affords him a right of action by which such injury may be redressed. His long-continued *12 acquiescence in such holding can only be rationally accounted for by presuming that it was rightful.
But how can any such presumption apply to this case ?
The erection of the counting-room by the appellee on the line between him' and the appellant was no violation of the right of the latter; he could neither complain of nor prevent it by any kind of legal means. The appellee had an undoubted right to do just what he did. There was no interference with the rights of the appellant, and therefore no occasion or opportunity to assert his dissent, and it is difficult to see upon what foundation the presumption of a grant can be based. No grant was necessary to authorize any thing the appellee did; he had the right to do it without a grant, and therefore the fact that he did it furnishes no ground for presuming a grant. In doing it, he did no wrong to the appellant, and as lapse of time and the presumption arising therefrom are resorted to only to justify one in doing that which would otherwise be a usurpation of the rights of another, there is neither occasion or ground for any such presumption in this case.
Suppose the appellee’s vendor, Bryant, instead of making a door and window, had built his wall without openings, and had enjoyed for twenty years the benefit of the sunlight and air coming against the wall from appellee’s lot whereby the wall was kept dry and preserved against the ravages of dampness, and the appellant had erected a parallel wall on his own lot whereby light and air were excluded, and in consequence the wall became damp and was injured or his house made damp whereby his goods were spoiled, why not, upon the same ground upon which a grant of an easement of light and air entering at the openings is presumed, presume a grant of an easement of light and air for the preservation of the solid wall and the dryness of the interior of the house? And where is this doctrine of presumed grants to end if the principle upon *13 ■which such grants of easements of light and air is sought to be sustained is sound?
In Parker v. Foote, 19 Wend. 316, Justice Bronson, after stating that most of the cases in which it had been held that the right to incorporeal hereditaments may be acquired by long-continued enjoyment relate to ways, commons, markets, and the like, where the user, if not rightful, was an immediate injury to the person against whom the presumption was made, proceeds as follows: “ His property has either been invaded or his beneficial interest in it has been rendered less valuable. The injury has been of such a character that he might have immediate redress by action. But in the case of windows overlooking the land of another, the injury, if any, is merely ideal or imaginary. The light and air which they admit are not the subjects of property beyond the moment of actual occupancy, and for overlooking one’s privacy no action can be maintained. The party has no remedy but to build on the adjoining land opposite the offensive window. . . . Upon what principle the courts in England have applied the same rule of presumption to two classes of eases so essentially different in character, I have been unable to discover. If one commit a daily trespass on the land of another, under a claim of right to pass over or feed his cattle upon it, or divert the water from his mill or throw it back upon his land or machinery ; in these, and the like cases, long-continued acquiescence affords strong presumptive evidence of right. But in the case of lights there is no adverse user, nor indeed any user whatever of another’s property, and no foundation is laid for indulging any presumption against the rightful owner.”
Again he says: “ The learned judges who have laid down this doctrine have not told us upon what principle or analogy of the law it can be maintained. They tell us a man may build at the extremity of his own land, and that he may lawfully have windows looking out upon the lands of his neigh *14 bors. (2 Barn. & Cress. 686; 3 ib. 332.) The reason why he may lawfully have such windows must be because he does his neighbor no wrong; and, indeed, so it is adjudged, as we have already seen; and yet, somehow or other, by the exercise of a lawful right in his own land for twenty years, he acquires a beneficial interest in the land of his neighbor.”
We can add nothing to this reasoning. It seems to us conclusive. The same doctrine has been held in Massachusetts, South Carolina, Maine, Maryland, Pennsylvania, Alabama, West Virginia, Iowa, Ohio, Vermont, and Georgia; and in Connecticut the contrary doctrine once held is now discarded, while in Illinois, New Jersey, and Louisiana the English doctrine prevails. (Rogers v. Sawin, 10 Gray, 376; Napier v. Bulwinkle, 5 Rich. 311; Cherry v. Stein, 11 Md. 1; Haverstick v. Sipe, 33 Penn. St. 368; Pierre v. Fernald, 26 Me. 436; Ward v. Neal, 37 Ala. 500; Powell v. Sims, 5 W. Va. 1; Morrison v. Marquardt, 24 Iowa, 35; Hieatt v. Morris, 10 Ohio St. 523; Mullen v. Stricker, 19 Ohio St. 142; Hubbard v. Town, 33 Vt. 295; Mitchell v. Mayer, 49 Ga. 19.)
There was no foundation in the pleadings for that part of instruction number one, given by the court on the motion of the appellee, to the effect that the counting-room having been erected while Phillips & West were the owners of the residue of lot No. 8, the dominant estate was in appellee, and appellant had no right to obstruct the door and window in appellee’s house by erecting» a building on the adjacent lot.
The appellee based his right to recover on the sole ground that he had, by long-continued enjoyment of light and air from appellant’s lot, acquired a light to continue to enjoy that easement. Nor would the instruction have been correct if the facts upon which it was based had been alleged and proved or admitted. As we have already stated, Bryant bought the lot, and himself erected the counting-room, and placed the door and window in it.
*15 The fact that he bought the ground of Phillips & West, and that they then owned the adjacent ground, did not entitle Bryant to an easement of light and air over their adjacent ground for the house subsequently erected by him.
There are no doubt cases in which the grant of the right to enjoy light and air flowing into windows over the land adjacent has been implied. As if A sells a house with windows overlooking his adjacent land, and light and air through those windows are necessary to the comfortable enjoyment of thé house, under some circumstances, A may not afterward, by building on the adjacent land or otherwise, obstruct the flow of light and air so as materially to interfere with the comfortable enjoyment of the house, but will be presumed to have granted with the house that which is necessary to its reasonable use and enjoyment. (Story v. Odin, 12 Mass. 157; Palmer v. Fletcher, 1 Lev. 122; Rosewell v. Pryor, 6 Mod. 116; U. S. v. Appleton, 1 Sumn. 492.) But this doctrine is not universally recognized. See Morrison v. Marquardt, 24 Iowa, 35, where the cases on the subject are ably reviewed by C. J. Dillon, and the conclusion reached, though not applied in that case and not necessary to its decision, that it is not a principle of the law of this country “ that if a man sells a house with windows and doors opening into his vacant ground, he or his grantee can not afterward build upon such vacant ground in such manner as seriously to obstruct the flow of light and air to such house without express reservation of the right so to do. And there are several other cases to the same effect. (See Mullen v. Stricker, 19 Ohio St. 142; Maynard v. Esher, 17 Penn. St. 222; Haverstick v. Sipe, 33 id. 368.)
But no case can be found, in this country at least, in which it has been held that by the sale of a vacant lot in a town or city the vendor parts by implication with the right to build upon his adjacent vacant lot so as to obstruct windows or doors placed by his vendee in a house erected on his lot.
*16 The appellee also claimed damages for an alleged increase of danger of fire from the proximity of the appellant’s new building to his store, and also in consequence of the throwing of water from appellant’s building on the wall of his counting-room.
As we have already decided, the appellant had a legal right to erect the building complained of, and any damage resulting therefrom must be borne as an incident to the ownership of adjacent property.
It is not alleged that the appellant’s building was not erected in a proper manner, or that the water alleged to have been thrown upon appellee’s building was thrown there in consequence of any negligence or improper conduct on appellant’s part, and that also is damnum absque injuria.
The instructions of the court did not conform to the views herein expressed, and for that reason the judgment is reversed, and the cause is remanded for a new trial upon principles not inconsistent with this opinion. Chief Justice Lindsay dissenting.