In the Matter of the Application of FIORE C. LUONGO, Appellant, for a Peremptory Order of Mandamus against THOMAS P. FLANAGAN, as Superintendent of the Bureau of Buildings, Borough of Brooklyn, City and State of New York, Respondent.

Second Department, June 23, 1930.

*David D. Feuer* [*Manual K. Brodey* with him on the brief], for the appellant.

*Joseph P. Reilly* [*Arthur J. W. Hilly, Corporation Counsel*, and *Herbert S. Worthley* with him on the brief], for the respondent.

KAPPER, J. Petitioner is constructing a two-story brick dwelling house on premises of which he is the owner on North Portland avenue, Brooklyn. The northerly wall of the building is being erected on the lot line. The respondent, superintendent of buildings in the borough of Brooklyn, while finding no fault with windows to be installed in this wall, has refused to permit movable sash in order that the windows may be opened. This refusal is sought to be supported under a rule or order promulgated by the respondent's predecessor described as General Order No. 77, which reads as follows:

" On and after January 25, 1924, no window openings shall be permitted in walls of any structures along the side or rear lot lines, except fireproof windows with stationary sashes fitted with translucent wire glass.

" In frame buildings, the sashes, fitted with translucent wire glass may be of wood, including the frame.

" Double hung or other movable sashes will be permitted only by consent in writing of adjoining landowner."

It is to the last paragraph of this regulation that petitioner

objects, upon the ground that the superintendent of buildings was without power to make the installation of "double hung or other movable sashes" dependent upon the consent of the adjoining landowner. In his original application the petitioner proposed to build lot line windows of fireproofing with stationary sashes fitted with translucent wire glass. He proposes no change with the exception that he seeks to insert movable sashes in order that he may, whenever desirable, have open windows, and to that end he applied for an amended permit.

The respondent asserts his authority or the authority of his predecessor for the promulgation of said "General Order" by virtue of section 7 of the Building Code of the city of New York. Subdivision 1 of that section provides:

"1. Authority to adopt rules. The superintendent of buildings shall have power to adopt such rules with respect to the materials and mode of construction, consistent with the provisions of this chapter, as may be necessary to secure the intent and purposes of this chapter and a proper enforcement of its provisions. For any provisions of this chapter referring to the rules of requiring approval of materials or modes of construction, such superintendent shall adopt, when this section becomes effective or as the necessity may arise, such rules as are required or will establish the conditions of approval. So far as practicable such rules shall be uniform in all the boroughs."

And it is further provided in subdivision 2 of said section 7 that "Any rule adopted and promulgated as herein provided shall have the same force and effect as any provision of this chapter."

Without passing upon the power of the board of aldermen to enact an ordinance to make the installation of movable sashes dependent upon the written consent of the adjoining landowner, I am of the opinion that the power is purely legislative and could not be delegated to an administrative officer such as the superintendent of buildings. "It is a well-settled principle that public powers or trusts devolved by law or charter upon the council or governing body [of a municipality] to be exercised by it when and in such manner as it shall judge best cannot be delegated to others." (*Birdsall* v. *Clark*, 73 N. Y. 73, 76.) The Greater New York Charter (§ 43) empowers the board of aldermen to make, establish, alter, modify, amend and repeal ordinances covering the erection of buildings.

If by the clause above quoted from subdivision 2 of section 7 of the Building Code, the board of aldermen intended to lodge in the superintendent of buildings the power to legislate, that power cannot be sustained. It is not, however, necessary to read that

clause as a delegation of power to legislate. It may and should be read in harmony with the first subdivision which authorizes the adoption of rules by the superintendent of buildings " consistent with the provisions " of the Building Code. The promulgation of rules " with respect to the materials and mode of construction " does not imply authority for a rule beyond any provision of the Code itself. On the contrary, the rules must be " consistent " with the provisions of the Building Code. Rules may be framed by the superintendent of buildings governing tests of materials in order that they shall measure up to the standards prescribed by the Building Code. Construction also may be controlled in the interests of public security, or the safety of those engaged upon the work, so that there shall be a compliance with the laws of the State as well as of the city. Other instances may suggest themselves but if carried into a rule the provisions must be of an administrative character.

No provision of the Building Code is called to our attention which controls the matter of windows in a residence with the exception of section 130, which provides:

" 1. Windows required. Except as otherwise provided in this article or by any other law, every living room in every residence building hereafter erected shall have one or more windows opening directly upon a street or other open public space, or upon a court located upon the same lot or plot as the building and conforming to the requirements of this article for courts, provided that the widths of such street or open public space is not less than required by this article for courts."

And it is argued that the petitioner's desire to install his windows with movable sash in the wall of the building on the lot lines shows a non-compliance with section 130 in that no part of the wall is upon a street or court. Granting that that is so, a reading of the section shows its purpose to be to have one or more windows opening for air in every living room in every residence building. The language of the section is not a limitation upon proper windows but a requirement that every living room shall have at least one window open to the air. It is urged by the respondent that his regulation " provides an efficient means of fire protection." The argument seems to me to overlook the fact that this so-called " fire protection " is dependent upon the whim of the adjoining owner. If he consents in writing, then fire hazards are eliminated. The argument seems to me to be baseless.

It is also argued by the respondent that the petitioner has no statutory or common-law right to receive light and air from his neighbor's ground. It is said in the appellant's brief that his

wall faces a brick wall adjoining, which is three feet distant from it. Whether that be so or even if the adjoining land were vacant, the appellant's position is not based upon a claim of a right to light and air from his neighbor's property. That may be closed off at any time when the adjoining owner sees fit to build up to his lot line.

While the doctrine of ancient lights never had any existence in this country (*Myers* v. *Gemmel*, 10 Barb. 537), and an adjoining owner may not claim an easement of light and air (See *Kingsway R. & M. Corp.* v. *Kingsway Repair Corp.*, 223 App. Div. 281), it is certainly the right of such owner to avail himself of what light and air he can obtain. "He does no injury to his neighbor by the enjoyment of the flow of light and air, and does not therefore claim or exercise any right adversely to the rights of his neighbor." (*Pierre* v. *Fernald*, 26 Me. 436.)

The order denying petitioner's application for a peremptory mandamus should be reversed upon the law and the facts, with ten dollars costs and disbursements, and the motion should be granted, with ten dollars costs.

LAZANSKY, P. J., YOUNG, SCUDDER and TOMPKINS, JJ., concur.

Order denying petitioner's application for a peremptory mandamus order reversed upon the law and the facts, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.