# CASES

DECIDED IN THE

# SUPREME COURT OF APPEALS,

OF

# WEST VIRGINIA.

ROBERT POWELL *vs.* GILMORE F. SIMS.

July Term, 1871.

1. The common law of England is in force in this State only so far as it.is in harmony with its institutions, and its principles applicable to the state of the country and the condition of society.

2. The English common law doctrine of Ancient Lights disapproved.

3. An implied grant of an easement of light will be sustained only in cases of real necessity ; and will be denied or rejected in cases when it appears that the owner claiming the easement can, at a reasonable cost, have or substitute other lights to his building.

Owen D. Downey owned a property in Piedmont, Mineral county, known as the "Downey House." It consisted of two adjoining buildings, built of brick and wood. The latter had a wing which extended to the rear. On the 29th of March; 1869, he sold to Gilmore F. Sims, the wooden part of the building, and on the 24th of April following he sold to Robert Powell the brick building.

Powell shortly thereafter commenced the erection of a porch from the rear of his brick building along the side of the wooden wing of the Sims building to the street in the rear, and was closing up the windows in the same. Sims thereupon filed his bill of injunction in the circuit court of Mineral county, in July, 1869, alleging the destruction of his lights, which was the origin of this cause. The deeds to the parties respectively set forth the boundaries of the grounds by metes and bounds, and both parties were aware of the location of the buildings and their situation at the date of their purchases. Neither of the deeds contained any allusion to the subject of lights, or express grant or restriction in relation thereto.

It appeared in the testimony that the ground floor of the wing extending back on the property of Sims, was used by him as a kitchen to his hotel, and the second story as chambers for his guests. It further appeared that if the windows on the side next to the yard of Powell were closed up, that they could be transferred to the other or east side of the wing, where they would open upon a porch from which access was had to the rooms.

The circuit court of Mineral perpetuated the injunction at the October term, 1869; from which decree the defendant Powell appealed to this court.

*George A. Pearre* for appellant.
*C. J. Faulkner* and *F. M. Reynolds* for the appellee.

BERKSHIRE, P. The principles to be settled in this case are certainly important to the parties to be immediately affected by our decision, but they are much more so in their wider application to the citizens at large. And as the rule established in this case is to apply to and govern future cases in this State, the case has been examined and considered with the attention and care which its importance would seem to require. Each of the parties to this controversy claim under deeds from a common vendor, Owen D. Downey, who it appears, was the owner of both tenements at the time of the sale and conveyance to the appellee, which sale and conveyance were prior to that to the appellant. Downey, it also appears, built both of the houses—the one conveyed to the appellee

first—and afterwards occupied them together as a hotel. But at the time of, and for some time prior to the sale to the appellee, they were separately occupied by different persons or families and for different purposes. In the deeds to the parties, the boundaries of their respective premises are accurately described by metes and bounds, and the partition line or boundary between them is called for and clearly defined in each of the deeds. It further appears, that each of the parties examined the premises and had full notice of their location and condition at the time of their purchases. Also that the wing or rear building of the appellee's house extends southward from the main building, along and immediately upon the division line of the two properties, the windows in said wing being in the west side and overlooking the open space and yard of the appellant so conveyed to him by Downey; and that the appellant, when enjoined by the appellee, was erecting on his own ground a porch extending from his own building along the said wing to the street in the rear of the buildings, which porch, when completed, it is conceded would close up said windows and thereby exclude the flow of light and air through them into the rooms of said wing and rear building. The case was fully and ably argued, and our labors in its examination thereby much relieved and facilitated. On behalf of the appellee it was strongly and earnestly maintained that by his deed from Downey, he acquired by an implied grant an easement of light and air through the windows in controversy, and that a perpetual restriction and incumbrance was thereby imposed on the adjoining property of the appellant, which made it unlawful for him to obstruct and close the windows by the erection of the porch now in dispute. On behalf of the appellant it was insisted, with equal earnestness, that under the circumstances of this case, no such right or easement under his deed passed to the appellee, and that he had no right, therefore, to hinder or restrain the appellant from making any necessary or useful improvements on his own property, including the porch in controversy. It was also contended by the counsel for the appellee, that this case should be determined upon the doctrine and principles of the common law as established in *England* in reference to easements of light in similar cases. While on the other side it

was maintained that the English doctrine as applied to similar cases there, is repugnant to and inconsistent with our institutions and unsuited and inappropriate to the state of things in this country, and ought not therefore to be applied in this instance; and that the rule, as established by the American cases, should be applied to and govern this case. And in my view, our decision must depend mainly on the fact whether we follow the authorities of the one country or the other. For it cannot be questioned, that if we adhere to and are governed solely by the rule as established and applied under the English authorities, in that country, the appellee here must prevail; while on the other hand, it is clear, that if we adopt and apply the rule as settled by the decided weight of the American cases and authorities, independent of the effect of our registration act, the case must be determined for the appellant. It now, therefore, becomes material to enquire how far we are *bound* under our Constitution, to adopt and apply the English rule; and if not so bound, whether it or the prevailing doctrine as established in this country ought to be applied in this instance. To what extent, then, is the common law of England in force in this State? By section 8 of article 11 of the Constitution, it is provided that "such parts of the common law and the laws of the State of Virginia as are in force within the boundaries of the State of West Virginia, when this Constitution goes into operation, and not repugnant thereto, shall be and continue the law of this State until altered or repealed by the Legislature." The Constitution of the State of Virginia in force at the time of the creation of this State, as well as all previous constitutions of the former State, contained similar provisions adopting the common law so far as its principles were not repugnant to said constitutions. And I believe quite all of the States, by like provisions, have also adopted the common law so far as it is not inimical to their constitutions. But although so adopted, it was early held by the courts of Virginia, as well as of the other States, that the common law was in force in this country only so far as it was in harmony with our institutions, and its principles applicable to the state of the country and the condition of society. 1 Tuck. Com., 8, 9, and authorities cited.

The question of easement of light does not appear ever to

have been before the court of appeals of Virginia, and being therefore unaided as well as unfettered by any such authoritative adjudication, we are left free to adopt and apply, to the case now under review, such principles consistent with the rights of the parties in the premises, as will in our judgment best comport with the public good and the existing condition of things in this country. The essential enquiry, therefore, now is, what principle ought to govern us under the facts of the case? I have examined with much care and diligence the early English cases, with the view of apprehending if practicable, the real grounds upon which the doctrine of easement of light, in cases like the present, was originally established. My researches have not been successful. The modern English doctrine seems to be founded on the cases of *Palmer* vs. *Fletcher*, 1 Levintz, 122; *Cox* vs. *Mathews*, 1 Ventr. 239, and *Roswell* vs. *Prior*, 6 Mod., 116, which have been followed by the later cases. In reference to these cases, it will be found that but a very scanty and confused report of any of them is furnished. The *facts* are not given in any. None of them seem to have been much discussed or considered, and the opinions of the judge were announced from the bench on the hearing or trial. And from the reports that are given, I think it will be found impossible to glean from them the exact principle on which they were decided. For, whether it was because of an express grant of the light in the deed (which was the usual form of the deeds in that country), or was considered an easement acquired by prescription and was passed as an appurtenance with the tenements; *or* as an implied grant founded on necessity, or whether it was intended to lay down an arbitrary rule which should lie inflexible and without qualifications, cannot be determined. The rule was first laid down by two of the Judges, Twyeden and Wyndhan, in the case of *Palmer* vs. *Fletcher*, while Elynge, J., doubted, and Hyde, C. J., was absent. The proposition decided is briefly stated to be, that "if a man erected a house on his own land, and after, sell the house to one and the lands adjoining to another, the other cannot, by putting piles of timber on his land, obstruct the light of the house, though it be a new house, no more than the builder himself could." And the only reason he (the vendor) "cannot derogate from his grant,"

"for the lights are a *necessary* and essential part of the house."
The next case, *Cox* vs. *Mathews,* simply adheres to the case of
*Palmer* vs. *Fletcher,* and the proposition is stated by Lord Hale,
who pronounced the judgment in the same form and nearly in
the same language as the first case, assigning no reasons except
the remark that it was a plain case, "for the defendant fixed
boards to the plaintiff's house." The proposition is also put
in the same form and in similar language by Ch. J. Hautt, in
*Roswell* vs. *Prior,* that followed soon after. The controversy
in this case was between landlord and tenant, and it is stated
in the opinion or judgment, that it was *agreed by all the judges*
that, "formerly the way was to declare of *ancient lights* and
ancient *messuage,* but now that was altered." And *Palmer* vs.
*Fletcher* and *Cox* vs. *Mathews* are cited to show that it was neces-
sary in these *cases* to deed ancient lights and messuage. The
facts of the case are not given ; but from a note of the reporter,
it appears that an objection was raised, by motion in arrest of
judgment, after verdict, because the declaration failed to aver
*ancient* lights and messuage, and it was held *by the whole court,*
that "being after verdict, it shall be intended that it was
*given in evidence on the trial* that the house and windows were
*ancient."* From this, it would seem that the cases are mixed
up and confused with the early doctrine of ancient lights by
prescription, and that even in these cases it was necessary and
indispensable to a recovery for stopping the lights, if not to
aver it in the declaration to *prove on the trial,* that the house
and lights were *ancient.* And it may therefore be, from any-
thing that appears to the contrary, that in the cases above
referred to, the plaintiffs, in the view of the court, had ac-
quired an easement of light by prescription under the statute
reducing the period necessary to acquire such right to twenty
years, notwithstanding it is said in some of them the right in
such cases existed though the house or messuage be new. A
doctrine of so much practical importance thus established,
unless founded in wisdom and sound policy, it appears to me
would have but little to recommend it to the favorable consid-
eration of courts at the present day, and ought not to be
adopted and applied here, unless on account of its intrinsic
worth, it be considered the proper and better rule applicable
to the cases in this country. Turning to the American

authorities, I think there can be no mistaking the tendency of the cases. It will be found that in nearly all the States in which the question has been raised, the English doctrine of easements of light by prescription, which appears to be so tenaciously adhered to in that country, has been reprobated and discarded altogether as unsuited to our people and condition, and inconsistent with the existing system of registration in this country; that in a few instances only has the principle established in *Palmer* vs. *Fletcher*, and that class of cases, been acquiesced in and followed, while it has been greatly qualified in most of the cases where the question arose, and limited to cases of strong *necessity*. And there is also a manifest tendency to reject altogether the doctrine of implied grants of easements of light, and limit and confine such rights to *express* grants, so that the rights of the parties would be determined by the face of the deed under which they hold. 2 Washburn on Real Estate, 316, 18, top; *Myres* vs. *Gemmell*, 10 Barbour, 537; *Parker* vs. *Foot*, 19 Wendell, 309; *Morrisson* vs. *Marquaidth*, 24 Iowa R., 35; *Haverstick* vs. *Sipe*, 33 Pa. St., 368; *Mullen* vs. *Strickler*, 19 Ohio (State) R., 135; *Rogers* vs. *Swann*, 10 Gray R., 376; *Carrig* vs. *Dee*, 14 Id., 583.

The prevailing doctrine here would seem to be, that an implied grant of an easement of light will be sustained only in cases of real and obvious necessity, and will be denied or rejected in cases when it appears that the owner of the dominant estate can, at a reasonable cost and expenditure, have or substitute other lights to his building, so that he may continue and have the reasonable enjoyment of the same; leaving the owner of the servient estate also to the enjoyment of his own property free from the restriction and burden that would otherwise be imposed upon it. In the application of this principle, doubtless, some embarrassment will sometimes be realized in determining the *degree* of necessity that ought to be required to support the right to the easement, and each case must necessarily be settled on the facts and circumstances surrounding it.

This rule, it appears to me, is dictated by wisdom and sound policy, and sustained by the plainest principles of justice and equity, and ought therefore to be applied and enforced in this country. It is in accordance with the doctrine, long and well

established both in England and this country, in reference to implied grants of easements of ways founded on necessity ; 1 Saunders R., 323, Note 6. *Holmes* vs. *Elliott*, 2 Bing., 76; *Procter* vs. *Hodgson*, 29 Eng. Law and Eq., 453 ; Washburn on Eas. and Sev., 586–7, and authorities there cited. Why should the rule not be the same in both cases? Is there any difference in principle? If, as between coterminous land owners, an implied grant of an easement of way will not be permitted (as is well settled) where the party claiming it can have another way over his *own* property, why, it may with propriety be asked, should it not be so in the case of lights? I can recall no sufficient reason why it should not be the case, and it is conceived none could be suggested. Applying this principle to the case before us, it is easily settled, it being clear from the testimony in the record, that the appellee, for a very moderate and reasonable expenditure, can obtain other lights and air sufficient for the useful and reasonable enjoyment of the property in controversy, by substituting and shifting the windows from the west to the east front of said building; which would, at the same time, leave the appellant to the like use and enjoyment of his own property according to the boundaries designated in each of their deeds. And this would seem to accord with the intention and understanding of the parties at the time of their respective purchases, as it appears from the evidence of Stephen W. Downey, that at the time of the consummation of the sale to the appellee, and before the delivery of the deed, he was notified by said Downey, acting as the agent of the vendor, that the brick part of the property was under mortgage, and would have to be sold—and probably to the appellant—and that the vendor would put certain restrictions on the brick property if the appellee would remove certain other restrictions which had been placed on a certain house and lot which had been conveyed by the latter to the former in part payment for the property in dispute, and that the appellee then stated that he had no *right* to place *any* restrictions on the brick part, and the matter had never occurred to him before. And it further appears that certain other easements were secured to the appellee by express stipulations in his deed, which fact of itself has been held to be sufficient to rebut any presumptions of implied easements

(such as is claimed here) founded on necessity or otherwise. *Morrison and others* vs. *Marquard*, 24 Iowa, 35. And it may moreover be well doubted whether under our registration act providing that "no estate of inheritance or freehold in lands shall be conveyed unless by deed or will," any such easements could be acquired except by express grant in the deed. Code, ch. 71, s. 1 p. 459. Upon the whole case the decree, in my view, should be reversed, the injunction dissolved, and the bill dismissed with costs to the appellant here and in the circuit court.

The other Judges concurred.

DECREE REVERSED.