# SUPREME COURT OF APPEALS

OF

# VIRGINIA.

80   1<br>88  996

## Richmond.

TUNSTALL, TRUSTEE, &c., v. CHRISTIAN, TRUSTEE, &c.

JANUARY 8th, 1885.

1. LAND—*Support—Source of right.*—The right to support for land in its natural condition, from subjacent and adjacent soil, is *ex jure naturæ*, not dependant on grant, and not acquirable by prescription.
2. BUILDINGS—*Support—Easement acquirable.*—The right to support for artificial burdens on land is an easement acquirable only by grant, express or implied; and neither this right nor the right to light and air can, in America, be acquired by prescription. *Secus* in England.
3. IDEM—*Idem—Implied.*—The right to support for artificial burdens on land may be implied from circumstances, *e. g.*: where houses needing each the other's support are built by same owner, and one is granted without stipulations to the contrary. But this implied right is confined to the *status quo* at time of grant, and extends not to increased burdens upon the soil.
4. IDEM—*Idem—Case at bar.*—L owned two lots, with light wooden buildings, adjoining each other. By purchase B acquired one. By devise C acquired the other. The house on C's lot was burned. A similar one was built, and also burned, and was replaced by a three-story brick house, requiring a greatly-enlarged excavation. B afterwards removed his wooden house to rear an immense structure, requiring a deep excavation, and notified C to protect his property from injury by reason

thereof.   C obtained an injunction restraining B from excavating within *ten feet* of his foundation.

HELD:

1. C possesses no right, express or implied to support for his *building* from the soil of B.

2. B's failure to object to or his acquiescence in C's erecting his building, on his own land, does not *estop* B from denying C's right to support for that building from B's soil.

3. B is bound to use reasonable care and skill in making his excavation and erecting his structure, and is answerable for all damage done C by failing to use the same.

4. It would seem reasonable to require one about to endanger a neighbor's building by improving his own, to give that neighbor notice.

Appeal from decree of corporation court of Lynchburg, rendered August 1st, 1882, in a chancery suit wherein Camillus Christian, trustee for Mary D. Christian, and Mary P. Davis and als. were complainants, and A. A. Tunstall, trustee for Mary M. Brooks and als. were defendants.

In 1820 two adjoining lots in Lynchburg, on each whereof was a light, two-story wooden building, were owned by John Lynch. He conveyed one to his son-in-law, Alexander Liggatt, the father of Mrs. Brooks, one of the appellants. He devised the other to his daughter, Mrs. Zolinda Davis, under whom the appellees claim. The building on the latter lot was destroyed by fire; a similar one was erected in its place, and also destroyed. The appellees then, in 1877, erected a large, three-story brick store in its place, greatly enlarging the former excavations for that purpose. In 1882 the appellant removed the old building from Mrs. Brooks' lot to make way for a large and expensive building, and notified the appellee to protect his property from any injury which might result from the increased size and depth of the proposed excavation. The appellant began the work, and the appellee filed his bill in said corporation court, praying for an injunction to restrain him. The bill charged that the proposed building was of such size and character that the necessary excavations therefor would go below

the foundation of his building, and would throw it down and destroy it, and claimed the right to support for his land and building from the adjacent and subjacent soil. An injunction was granted until further order. The defendant answered, denying the right to support, and that the proposed building was unnecessarily large, &c. Evidence was taken on both sides. At the hearing the corporation court perpetuated the injunction restraining the defendant from excavating within ten feet of the foundation of the plaintiff's building on a horizontal line at a right angle. From this decree an appeal was allowed the defendant, Tunstall.

Other facts are stated in the opinion.

*Kean & Kean* and *A. A. Tunstall*, for the appellants.

*Christian & Christian*, for the appellees.

Lewis, P., delivered the opinion of the court.

The questions to be determined are—first, whether the appellees have acquired, by prescription, the right to lateral support for their building from the adjoining soil of the appellants; and if not, then second, whether such right has been acquired by implication.

1. It is well settled that the right to support for land from the adjacent and subjacent soil is a natural right, analogous to the flow of a natural river or of air. It stands on natural justice, and is not dependant upon grant; and for an invasion of the right an action is maintainable without proof of negligence. But the right is confined to the soil in its natural condition. It does not extend to buildings or other artificial burdens thereon, increasing the downward and lateral pressure. And therefore, if one by digging in his own soil occasions damage to the building of the adjoining owner, he is not liable therefor in an action by the latter, provided he has used due care and

caution, and the plaintiff has not acquired the right to support in some mode recognized by law.   2 Rolle Abr. 564; *Stevenson* v. *Wallace*, 27 Gratt. 77; *Thurston* v. *Hancock*, 12 Mass. 220; *Gilmore* v. *Driscoll*, 122 Id. 199; *Transportation Co.* v. *Chicago*, 99 U. S. 635; *Penton* v. *Holland*, 17 Johns. 92; *Radcliff's ex'ors* v. *The Mayor*, &c., 4 N. Y. 195; *Charless* v. *Rankin*, 22 Mo. 567.

The right to support for artificial burdens on land is an easement, and can be acquired only by grant, express or implied. According to the English decisions this right, which is treated as analogous to the right to light and air, may be acquired by prescription.   In other words, a grant is presumed from lapse of time and accompanying facts.   *Stansell* v. *Jollard*, 1 Selw. N. P. 445, *Humphries* v. *Brogden*, 12 Q. B. 749; *Dalton* v. *Angus*, 6 Appeal cases, L. R. 740.

But the English doctrine of "ancient lights" has been repudiated by the American courts as irreconcilable with principle, and not adapted to the rapid physical development of the country, especially in cities and towns.   "And in this," says Washburn in his work on Easement, "is witnessed another illustration of the influence of those silent agencies which are constantly at work in a free community, in adapting and giving form and consistency to the rules of its common law, to meet the wants and conditions of the body politic."   Ch. 4, sec. 6, p. 17; see also *Parker* v. *Foote*, 19 Wend. 308; *Pierre* v. *Fernall*, 26 Me. 436; *Haverstick* v. *Sipe*, 33 Penn. St. 368: *Napier* v. *Bulwinkle*, 5 Rich. (S. C.) 311; *Keats* v. *Hugo*, 115 Mass. 204; *Rogers* v. *Sawin*, 10 Gray, 376; *Smith* v. *White*, 11 Md. 23; *Powell* v. *Sims*, 5 W. Va. 1; *Hubbard* v. *Town*, 33 Vt. 295.

In a note to the case of *Stein* v. *Hauck*, 17 Am. Law Register (July, 1878), p. 440, a learned writer reviews the cases, and concludes as follows; "In view of the course of our decisions on this question, we think it may be reasonably concluded that, notwithstanding some early opinions to the contrary. it cannot now be safely asserted that the doctrine of a right to light and

air by a mere prescriptive use prevails at present in a single American State."

The same reasoning would seem to apply with equal force to the English doctrine of a prescriptive right to support for buildings.

It is true that in some of the American cases are to be found *dicta* of the judges in favor of the doctrine. And in *Stevenson* v. *Wallace*, 27 Gratt., *supra*, there are expressions in the opinion of the court, founded on certain English cases, to the same effect. But the decision of the question was not necessarily involved, inasmuch as the right asserted in that case was held to be clearly implied from the terms of a deed by a common predecessor in title of the parties.

The doctrine may well enough apply to the acquisition of a right of way, or to the use of water and the like, but it is difficult to see how, on principle, it can be held to apply to a case like the present; for when a man builds on his own soil to its extremity he simply exercises a lawful right. He does not encroach upon the soil or invade the rights of his neighbor, and consequently there is nothing of which the latter can complain. Now, to acquire an easement by prescription, it is essential that the user be not only honest and uninterrupted for a number of years, but open and adverse, and it must be with the acquiescence of the owner of the servient tenement. 2 Min. Insts. 492, *et seq.* But how, under the circumstances mentioned, can there be said to be an *adverse* use of another's property? Or how can the acquiescence of one in an act be implied who has neither the right nor the power to prevent it? It is true that, in order to prevent the acquisition of the right, the adjoining owner might, by excavating in his own soil, bring down his neighbor's building before the right to support could be fully acquired. But such an extraordinary and unneighborly act would not only involve labor and expense, but might endanger and perhaps destroy his own house. And

how can a man be reasonably required to injure his own property in order to preserve his rights respecting it?

The doctrine contended for by the appellees, whether heretofore maintained as resting on an absolute rule of law, or on the ordinary principles of prescription, is at variance with reason, and ought to be rejected. It may have been adapted to the age in which it was first announced in England, but is unsuited to the building of cities and towns in a progressive country like ours at the present day.

Fortunately, authority is not wanting in support of these views. The question arose and was carefully considered in a recent case by the supreme court of Georgia, in which it was held that the right to support for buildings can on no principle known to the law be acquired by prescription. *Mitchell* v. *Mayor of Rome, &c.*, 49 Ga. 19. The court said: "Neither in the case of the window opening out on another man's land, or of a building erected on the dividing line, has the owner committed an act against which his neighbor can protest. He has not touched his property, or invaded any right, or given any cause of action. He had a right to use or build on his lot to the furthest limit of his boundary. He has only done this, and never has had any use, or possession, or enjoyment of any right, corporeal or incorporeal, belonging to another, to which objection could in any form be made; and it would, therefore, be a misuse as well as an abuse of the terms *license, grant, and acquiescence* to say that he has acquired a right by means thereof from the owner of the adjoining lot. This was so expressly decided in *Hoy* v. *Sterrett*, 2 Watts, 227, and in *Richart* v. *Scott*, Id. 460. The grounds upon which these decisions are put are precisely the same as those in the cases applicable to light and air."

Similar views, though *obiter*, were expressed by Chief Justice Gray, in the later case of *Gilmore* v. *Driscoll*, 122 Mass., *supra*. See also note to the case of *Thurston* v. *Hancock*, 7 Am. Dec.

62, *et seq*; Bennett's Goddard on Easement, 231, *et seq*: Wood on Nuisances, chap. 5, sec. 202.

We are therefore of opinion that, as a prescriptive right, the claim of the appellees cannot be sustained.

2. The next question is whether it can be sustained on the theory of an implied grant.

The right to support is implied where houses are built in common by the same owner, each needing the support of the other, and a grant of one is made without express stipulation to the contrary. In such case the owner is presumed, as against himself, to grant the right to support, and so reciprocally to reserve the right in his own favor. The right is also implied where property, consisting of a house and unimproved land, is severed by sale. And the right to support, thus granted and reserved, is transmitted to the successors in title of the parties respectively. *Richards* v. *Ross*, 9 Exch. 218; *Stevenson* v. *Wallace*, 27 Gratt. 88; Bennett's Goddard, 227.

But the right is confined to the condition of things at the time of the grant. If, therefore, increased burdens are afterwards placed upon the soil, as by erecting new buildings or adding to those already erected, and damage to the building is caused by excavations in the adjoining soil, an action is not maintainable for the injury if it would not have occurred except for the increased weight. Bennett's Goddard, 414. See generally on the subject of easements by implication, *Sanderlin* v. *Baxter*, 76 Va. 299, and cases cited.

The application of this principle is decisive of the present case. It appears that the titles of the parties were derived from a common grantor, John Lynch, who, in 1820, sold the lot now owned by the appellants, reserving the lot now owned by the appellees. The last-mentioned lot was soon afterwards, by his will, devised to his daughter. At the time the property was severed by sale, each lot was occupied by a light, two-story wooden building, the one adjoining the other. That on the lot of the appellees having been destroyed by fire, in 1863, was re-

placed by a similar structure, which also was afterwards burned. Soon thereafter the appellees' present building was erected, which is a three-story brick building, and of vastly greater weight and proportions than the original wooden structure. Moreover, in erecting the present building, the original excavation was greatly enlarged, being extended back to the extremity of the lot. It appears that originally the cellar extended back from the front line, on Main street, only a distance of some sixty or seventy feet, or less than one-half the length of the present foundation. It further appears that so much of the destroyed buildings as did not rest on the stone walls at the sides of the cellar was supported by blocks, and that for a distance of one-half or more of the length of the present building there was, before it was erected, no building (or at least none that can be definitely located), and that consequently, as to that distance, there could have been no implied easement of support from the appellees' soil. The evidence satisfactorily shows that, in view of the nature of the soil, the proposed excavation can be made, with the exercise of reasonable skill, without danger of serious injury to the appellees' building. And it shows, beyond reasonable doubt, that but for the increased burden upon the soil, by the erection of that building, the work could be accomplished without at all endangering the adjoining property. This is substantially testified to by the appellees' own witness, Forstberg, a civil engineer, and to the same effect is the testimony of other witnesses.

It is contended, however, that the appellants are estopped from denying the claim asserted, on the ground of their implied acquiescence in the erection of the appellees' building as it is. But this contention is not well founded. The answer is similar to what has already been said in respect to the claim of a right by prescription, namely—that in erecting their building the appellees merely exercised a lawful right, not in derogation of the appellants' rights, and were in no way influenced or induced to do so by the latter. There is no ground, therefore,

upon which the doctrine of estoppel can be applied to a case like the present.

But although the implied right to support has thus been lost, yet the appellants are bound to use reasonable care and skill in the prosecution of their work; and what is such care and skill is a question always to be determined on the particular facts and circumstances of the case. *Foley* v. *Wyeth*, 2 Allen (Mass.), 131; *Shafer* v. *Wilson*, 44 Md. 268: *City of Quincy* v. *Jones*, 76 Ill. 342; *McMillan* v. *Staples*, 36 Iowa, 532; *Charless* v. *Rankin*, 22 Mo. 566.

There is nothing in the record to show that thus far the appellants have not proceeded with reasonable care and a due regard for the rights of the appellees. It appears that before commencing their excavation, they formally notified the latter, in writing, of their plans and intentions, and invited them to take such steps as they might see fit to protect their interests. Whether it was incumbent on them to give such notice is a question not necessary to be determined; but the obligation to do so would seem to be a reasonable requirement. In the case of *Lasala* v. *Holbrook*, 4 Paige, 169, Chancellor Walworth said: "From the recent English decisions it appears that the party who is about to endanger the building of his neighbor, by a reasonable improvement on his own land, is bound to give the owner of the adjacent lot proper notice of the intended improvement, and to use ordinary skill in conducting the same; and that it is the duty of the latter to shore or prop up his own building, so as to render it secure in the mean time." And it was accordingly held in that case that, as the defendant was proceeding with reasonable care and caution in the erection of his building, and in laying the foundations thereof, which he proposed to sink to a depth of ten feet below the foundation of the complainant's building, it was for the latter to adopt measures to secure their building against the dangers to which it was exposed.

In *Massey* v. *Goyder*, 4 C. & P. 161 (19 Eng. Com. Law, 321),

it was held that the defendant, having given notice to the occupant of the adjoining lot of his intended improvement, was only bound to use reasonable and ordinary care in the work, and was not bound in any other way to secure the adjoining building from injury; although from the peculiar nature of the soil, he was compelled to lay the foundation of his new building several feet deeper than that of the old.

These principles have been recognized in numerous cases, and may be considered as well established. Nevertheless, by the decree complained of, the appellants, the defendants below, were not only restrained from carrying out their designs, but, in the language of the decree, were enjoined from "continuing their excavation to within ten feet of the foundation of the plaintiff's building, on a horizontal line at right angles, that being, in the opinion of the court, a sufficient lateral and subjacent supporting soil to prevent any damage to the plaintiffs' lot or property." We are unable to see upon what ground this decree can be sustained. In our opinion, it is unwarranted both by the law and the facts of the case.

The proposed building of the appellants, it is true, is, in point of size, unusual for the city of Lynchburg; but considering its central and desirable location, and the increasing population and business of the city, it cannot be said to be larger than the probable demand for such buildings in the near future will require. Nor can it be inferred that when the lot of the appellants was sold by John Lynch, in 1820, it was the intention of the parties that the wooden structure then standing should never be replaced by a more convenient and commodious building—better adapted for business purposes. Such an inference would be most unreasonable, and cannot be seriously contended for.

The decree must be reversed, and the bill dismissed.

DECREE REVERSED.