Handlan v. McManus.

42  551
69  587

ALEXANDER H. HANDLAN, JR., Respondent, v. CAMILLA S. McMANUS, Appellant.

### St. Louis Court of Appeals, December 9, 1890.

1.  **Easements:** PRESCRIPTIVE RIGHTS : RIGHT OF LATERAL SUPPORT FOR BUILDINGS. The right to have a building supported by the land the adjoining owner cannot be acquired by prescription, when there is no actual occupancy or adverse user of any of that land, as where the building does not encroach upon, or extend beyond, the boundary of that land. (*Casselberry v. Ames*, 13 Mo. App. 575, *overruled.*)

2.  ——— : ——— : ANCIENT LIGHTS. *Held, arguendo,* that the common-law doctrines of ancient lights do not obtain in this country.

*Appeal from the St. Louis City Circuit Court.*—HON. JAMES E. WITHROW, Judge.

REVERSED (*nisi*).

*D. D. Fassett* and *Sim. T. Price,* for appellant.

*Cunningham & Eliott,* for respondent.

BIGGS, J.—In July, 1885, the plaintiff and the defendant were the owners of adjoining lots in the city of St. Louis. The house on the plaintiff's land was erected in 1849, and it was built immediately on the line between the two lots. About a year thereafter the owner of the adjoining lot, under whom the defendant claims, also built a house, and in doing so the building was extended to the limit of the lot next to the plaintiff's building. In the erection of this house, the owner was permitted, under some kind of a license, to use the west wall of the building first constructed. Under this license or agreement, the ends of the beams and the timbers supporting the stairway of the new building were inserted into, and supported by, the west wall of the house afterwards purchased by the plaintiff.

In July, 1885, the defendant, after notice to the plaintiff, removed her old building, and made the necessary excavations for a new house. The plaintiff complains that the defendant, in doing this work, permanently injured the walls of his building. The petition contains two counts. In the first count the plaintiff averred, in substance, that the defendant in removing her house acted recklessly and negligently, so as to cause the west wall of the plaintiff's house to buckle and become weakened, thereby necessitating a large expenditure of money to prevent it from falling. In the second count the plaintiff sued for damages to his building by reason of the excavations made by the defendant. It was claimed by the plaintiff that, by reason of the removal of the soil on the defendant's lot immediately adjacent to his lot, the walls of his house cracked, causing the breakage of rafters, plastering, glass and brick work. It was not alleged that the defendant was guilty of any negligence in making the excavation, but the plaintiff proceeded upon the idea that the right to have the soil of his neighbor's lot as a lateral support for the building had been acquired by prescription. This prescriptive right was alleged to exist by reason of the fact that the plaintiff's building was a substantial structure, and had been erected by a former owner of the lot in 1849.

The answer to the first count was, in effect, a general denial. The answer also contained a denial of the cause of action stated in the second count, and, as a special defense, the defendant claimed that under the contract for the use of the west wall, the plaintiff's house and lot were made servient to the house and lot of the defendant; and, further, that, if the plaintiff had acquired a prescriptive right to have his house supported by the soil of the defendant's lot, this right had been forfeited or waived by additions and alterations made to the plaintiff's house in 1879, by reason of which the burden upon the defendant's soil had been greatly

increased without her consent. The case was submitted to the court without a jury, and the finding on the first count was for two hundred and thirty-six dollars and fifty-two cents, and on the second count for thirty-one dollars and eight cents. Final judgment was rendered for two hundred and sixty-seven dollars and sixty cents, and from this judgment the defendant appealed.

In reference to the first count the plaintiff complains of, and assigns for error, the refusal of the court to give the following instruction: "The court, sitting as a jury, declares the law to be that, if the court finds from the evidence that, at the time of the alleged damages in the first count of his petition, the building of plaintiff was occupied by a tenant under a lease from plaintiff for a term of nine years, which said lease required said tenant to restore to plaintiff said building in good repair, and that the damages alleged in said first count were to the leasehold estate, and not to the reversionary estate, then plaintiff cannot recover on said first count of his petition, and the court will find for defendant on said first count."

The plaintiff's contention is that there is no testimony in the case, upon which this instruction could be predicated; that the plaintiff, in his offer of proof, included the lease which showed that the land was leased for nine years, and that it, together with the other evidence included in the offer, was rejected by the court. The plaintiff's counsel states the record correctly. We will rule this assignment against the defendant. However, if there should be a retrial of this case, the views of this court on the question sought to be raised will be found in the case of *Bobb v. Syenite Granite Co.*, 41 Mo. App. 642, decided at the present term of this court.

We now come to the consideration of the legal questions involved in the second cause of action. As heretofore stated, the plaintiff does not claim that the defendant was guilty of any negligence in making the

excavations, or that they were of unusual depth, but his right of action is based on the fact that the removal of the soil, adjacent to his building, caused its west wall to crack, etc. He claimed that he had the legal right to have his building supported by the soil of the defendant's lot. It is not pretended that he possessed any such interest by actual grant, either from the defendant, or from any former owner of defendant's lot, but the right is predicated solely upon the fact, that the plaintiff's building was a permanent structure, and that it had been permitted to remain in the same position since 1849 ; in other words, that the right of lateral support had been acquired by prescription. It must also be borne in mind that no portion of the plaintiff's building was on the defendant's lot. The plaintiff's house was constructed immediately on the west line of his lot. In support of this theory of the law, which was adopted by the court, the following declaration of law was given (number 4): "The court declares the law to be that, if the building of plaintiff had been standing for twenty years prior to the injury complained of, it had thereby acquired a prescriptive right to the lateral support of the adjoining ground of the defendant; and that, if the defendant excavated her ground and by reason thereof injury resulted to the building of the plaintiff, he is entitled to recover, as damages, such sum as will reasonably compensate him for such injury." On motion of the defendant, the court gave the following instructions: "The court, sitting as a jury, declares the law to be that, before the court can find a prescriptive right to support for plaintiff's building by defendant's adjacent soil, the court must find that plaintiff, or his predecessor in title, had, for a period of not less than ten years, claimed and exercised an adverse, uninterrupted and continuous right to have his building in the condition, in which it stood at the time of the excavation, complained of, supported by defendant's soil." This instruction the court gave. The defendant

also asked the court to give the following instruction, which was refused : "The court, sitting as a jury, declares the law to be that, if the court finds from the admissions in plaintiff's pleadings, or from the evidence, that defendant's building was constructed and rested against and upon plaintiff's building, and the beams of defendant's house inserted into the wall of plaintiff's building, under and pursuant to a contract made between the owners of the respective premises, subject to which contract plaintiff and defendant hold said respective premises, then plaintiff could not, during the exercise by defendant of such contract rights, acquire a prescriptive right to the support furnished to his building by defendant's adjacent wall, and in such case plaintiff cannot recover on the second count of his petition."

The court adopted the theory that a land-owner could, by prescription, acquire the right to the lateral support of his buildings by the soil on his neighbor's land ; and that, in order to accomplish this, no actual occupancy or adverse user of any portion of his neighbor's land was necessary. And the same idea, in a qualified sense, seems to be conveyed in the instruction asked by the defendant and refused by the court. However, we find that it is impracticable for us to dispose of the assignments of error without passing on the real question upon which the plaintiff's right of action is predicated.

The trial court and counsel doubtless were controlled by the decision of this court in the case of *Casselberry v. Ames*, 13 Mo. App. 575, in which this court recognized the English doctrine of lateral support, acquired by prescription, for ancient structures. In view of the fact that the discussion of the question was not necessary to the determination of that case, and from the further consideration, that the question was not argued by the defendant in error, we have concluded to re-examine the question.

That such a property right could exist by direct grant cannot be questioned, and title to such a right by prescription must be based upon the presumption of an original grant. It is upon such a presumption, that all prescriptive titles to easements over land must rest. It is the undisputed law of real property, that each coterminous proprietor of land is entitled, as a matter of natural right, to have the soil of his neighbor's land remain as a support for his land in its natural condition, and that this natural easement only exists in favor of the adjoining land in the condition that nature left it. If the land-owner claiming such a right has increased the weight on his own soil by buildings, etc., this natural right of lateral support is destroyed, unless it is preserved by a direct grant. *Charless v. Rankin*, 22 Mo. 566. Mr. Washburn in his treatise on the subject of easements (page 129) has said: "To constitute such a user or enjoyment as raises the presumption of a grant, requires, in addition to the requisite length of time, that it should have certain qualities and characteristics, such as being adverse, continuous, uninterrupted, and by the acquiescence of the owner of the inheritance out of, or over, which the easement is claimed." The same author, in section 131, makes use of this language: "The use and enjoyment of what is claimed must have been *adverse, under a claim of right, exclusive, continuous, uninterrupted*, and with the knowledge and acquiescence of the owner of the estate in, over, or out of which the easement prescribed for is claimed, *and while such owner was able, in law, to assert and enforce his rights, and to resist such adverse claim, if not well founded.*" This is elementary law, and is not disputed by anyone.

Can the right of lateral support, when treated as an acquired easement, be upheld when the tests laid down by Mr. Washburn are applied? That some of the English authorities hold to the affirmative of this question cannot be doubted (*Stansell v. Jollard*, 1 Selw.

N. P. [11 Eng. Ed.] 441 ; *Hide v. Thornborough*, 2 Car. & Kir. 250 ; *Wyatt v. Harrison*, 3 Barn. & Adol. 871 ); and there are American decisions which are in the same direction. But our research has convinced us that the trend of modern American decisions is against the English rule. The idea seems to be that this ancient law, as interpreted by some of the English courts, is unreasonable and out of harmony with the law touching the acquisition of other easements by adverse user, and that, like the law of ancient lights, it ought not to find a place in American jurisprudence. We can readily understand why an ordinary easement right, such as a public or private roadway, can be acquired by an adverse user. There is nothing unjust or unreasonable in this to the owner of the land. In such a case, the user is obvious and actual, and, if it is not begun under a license, it will be held to be adverse. Under such a condition of things, the owner of the land is put upon his guard, and is notified that a property right is slipping from him. It is within his power at any time, before the expiration of ten years, to protect himself against such user by legal proceedings. But, if he acquiesces in such use for the requisite period, the law will presume an original grant of the easement by him upon the theory, that he would not have acquiesced in such user, had this not been true.

But we ask how can any such presumption be indulged in against the defendant in this case, or his grantors? The plaintiff's grantor had the undoubted right to extend his building to the very verge of his lot. The defendant's grantor could in no way object to this. Yet, according to the English rule, although his hands were tied as it were, he was compelled to stand by and see a property right pass from him through no fault of his. As well might it be said that he could lose the title to his land by a stealthy or secret use.

We find the most satisfactory discussion of this question in *Mitchell v. Mayor*, etc., 49 Ga. 19. A few

extracts from the opinion will suffice to show the mind of the court on the subject. The court said : "This rule then of presumption of right by grant, or otherwise, may well apply to claims · which relate to commons, markets, water-courses, ways and the like, where an adverse user or enjoyment is a direct and overt injury to the person who may be the true owner, and against whom the presumption is to be made. In all these instances, there is an invasion on the property of another, or his beneficial interest in it is lessened. The wrong done may be redressed by immediate action. During all the time, which by its lapse may raise the presumption against him, he has it in his power to arrest that presumption by asserting his right, and having it settled by a judgment. But it is difficult, if not impossible, to see how this doctrine can be made to apply to those instances of easements, so called, where there is no possession of anything belonging to another, no encroachment upon another's rights, no adverse user, in fact nothing done whatever, against which another could complain, or for which an action could be brought, and no remedy existing whereby to prevent such a presumption from arising. If it does so apply, a person would be compelled to submit to the loss or depreciation of important rights, or to a damaging interest accruing to another by mere lapse of time, and be utterly powerless to prevent it, save, perhaps, by some churlish or expensive appropriation of his property to uses or purposes hurtful to himself and offensive to his neighbor."

Justice GRAY in the case of *Gilmore v. Driscoll*, 122 Mass. 199, 207, thus expresses himself on the subject : "It is difficult to see how the owner of a house can acquire by prescription a right to have it supported by the adjoining land, inasmuch as he does nothing upon, and has no use of, that land, which can be seen, or known, or interrupted, or sued for by the owner thereof, and, therefore, no assent of the latter can be presumed to the

acquirement of any right in his land by the former. The English cases are founded on an analogy to the doctrine of ancient lights, which is not in force in this country." The supreme court of Massachusetts was committed by a line of decisions to the English rule ; yet this but adds strength to the criticism of the law by Judge GRAY. It showed a disposition on his part to break away from so unreasonable a rule of property, and adopt another, more in harmony with the changes and growth of a new country.

In the notes of Bennett's edition of Goddard's Law of Easements, at page 231, we find this : "Notwithstanding the numerous English authorities, supposed to sanction the doctrine of a prescriptive right for the support of buildings, cited by Mr. Goddard, it may be more than doubted whether such a proposition will be established on this side of the Atlantic. The reasons against it are the same as those against a prescriptive right to light and air, which, with the authorities on the subject, are given in the preceding part of this work. It is true many *dicta* may be found in the American reports sustaining such a doctrine, and Judge WASHBURN, in his excellent treatise on easements, assumes it as settled law, and perhaps it has been generally so understood in the profession ; but if, as all agree, prescription rests for its basis upon an implied acquiescence of the adverse party; if, as none deny, no acquiescence can be implied in an act which such adverse party has no legal right or remedy to prevent ; and if, as is clear, one land-owner has no legal power to prevent another from erecting and maintaining a building on his own land, even *ad cœlum*, it is difficult, if not impossible, to understand how the continuance of such a building for twenty, or even a hundred, years, can raise a presumption of assent in one who has no power or right to dissent. He cannot tear down the house ; he cannot bring an action for its erection ; he cannot even dig down on his own land and let it fall before it has

acquired any supposed right from age ; for that would cause the land under such house to fall also, and for that injury he would be undoubtedly liable to an action, the damages being confined to the injury to the land and not to the building. He is, therefore, powerless ; and yet it has been supposed, that, with his arms bound and his hands tied, he is legally assenting to an act from which he has no power to dissent."

The supreme court of Virginia takes a similar view of the subject. In the case of *Tunstall v. Christian*, 80 Va. 1, the court, speaking through Judge LEWIS, said : "The doctrine may well enough apply to the acquisition of a right of way, or to the use of water and the like, but it is difficult to see how, on principle, it can be held to apply to a case like the present ; for, when a man builds on his own soil to its extremity, he simply exercises a lawful right. He does not encroach upon the soil or invade the rights of his neighbor, and consequently there is nothing of which the latter can complain. Now, to acquire an easement by prescription, it is essential that the user be not only honest and uninterrupted for a number of years, but open and adverse, and it must be with the acquiescence of the owner of the servient tenement. But how, under the circumstances mentioned, can there be said to be an adverse use of another's property? Or how can the acquiescence of one in an act be implied, who has neither the right nor the power to prevent it? " See also note to the case of *Thurston v. Hancock*, 7 Am. Dec. 62.

And even the English courts have begun to question this doctrine. In 1887, it was discussed in the Queen's Bench in the case of *Angus v. Dalton*, 3 Q. B. Div. 85, and Chief Justice COCKBURN, in the course of his opinion, treated of this prescriptive right as follows : "In every other form of easement the party, whose right as owner is prejudicially affected by the user, has the means of resisting it, if illegally exercised. In the

· case of the so-called 'affirmative' easements he can bring his action, or oppose physical obstruction to the exercise of the asserted right. Even in the case of another negative easement, and which is said to approach the more nearly to this,—that of light,—the supposed analogy entirely fails. For, although no action can be brought against a neighboring owner for opening windows overlooking the land of another, there is still the remedy, however rude, of physical obstruction by building opposite to them. But against the acquisition of such an easement as the one here in question, the adjoining owner has no remedy or means of resistance, unless, indeed, he should excavate in his own immediately adjacent soil while the neighboring house is being built, or before the easement has been fully acquired, for the purpose of causing the house to fall."

It will be thus seen that Chief Justice COCKBURN thinks there is some excuse for the law of ancient lights, but that, in his opinion, there is no reason whatever in the rule which permits one man to obtain a property-right in the lands of his neighbor, when the right of protection against the encroachment is absolutely denied to the latter. Now, in all the American states, with but few possible exceptions, the ancient common law in reference to lights has been repudiated. The reason assigned for its rejection is, that it is not suited to the condition of a country which is growing. In *Parker v. Foote*, 19 Wend. 309, it is styled, "the modern English doctrine;" "an anomaly in the law;" "a departure from the old law." And the court there says: "It may do well enough in England. * * * But it cannot be applied in the growing cities and villages of this country without working the most mischievous consequences."

Such is our opinion concerning the acquisition of the right of lateral support of adjacent soil by prescription. We think it ought to go the way of the law of

ancient lights. Our country is comparatively new, where the exigencies of trade and the spirit of improvement call for new and additional use of the soil. This is especially true in our large cities. It is not proper that the free use of land for legitimate purposes should be shackled and incumbered by this ancient and unreasonable doctrine. In the case of *Charless v. Rankin*, 22 Mo. 566, we find a *dictum* of the court which would seem to recognize the English rule. The court said : "When, however, the lateral pressure has been increased by the erection of buildings, it seems to be well settled at common law by authorities that no man has a right to an increased support, unless he has acquired such a servitude by grant or prescription." It was not necessary to the decision of the case that the question should be passed on, because it was alleged that the excavations were made in a careless and unskilful manner. Further on in the opinion Judge LEONARD quoted with approval the following extract from the case of *Partridge v. Scott* (3 Mees. & Wels. 220): "If a man builds his house at the extremity of his land, he does not thereby acquire any right of easement for support or otherwise over the land of his neighbor. He has no right to load his own soil so as to make it require the support of that of his neighbor, unless he has some grant to that effect."

Our conclusion is that the case of *Casselberry v. Ames, supra*, must be overruled, in so far as it undertakes to decide the question here in judgment. This conclusion must necessarily invalidate the finding of the court under the second count. The judgment of the circuit court will, therefore, be reversed, and the cause remanded, unless the plaintiff will, within ten days from the delivery of this opinion, remit the amount of the recovery under the second count. If this is done, then the judgment will be affirmed for the residue. It is so ordered. All the judges concur.